IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MIGUEL ROBINSON | ) |
| Petitioner, | ) ) ) |
| v. | ) NO. 3:19-cv-00514 ) |
| | ) JUDGE RICHARDSON |
| UNITED STATES OF AMERICA | ) ) |
| Respondent. | ) |

## MEMORANDUM OPINION

Pending before the Court is Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1, "Petition"), supported by a memorandum of law (Doc. No. 2, "Memorandum in Support") and supplemental petition (Doc. No. 9, "Supplemental Petition"), wherein Petitioner seeks vacatur of his conviction and sentence in his underlying criminal case (case no. 3:16-cr-219-1) by which he is serving a prison term of 204 months. The Government filed a response in opposition to the Petition, and the Supplemental Petition (Doc. No. 28, "Response"), and Petitioner filed a reply (Doc. No. 34).

For the reasons discuss, the Petition (Doc. No. 1) and Supplemental Petition (Doc. No. 9) will be **DENIED.**

## BACKGROUND[1]

In an indictment filed on November 2, 2016, Petitioner was charged, in Counts One through Four, with: (i) possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count One); (ii) possession of firearms subsequent to a felony conviction, in violation

---

[1] Unless otherwise noted, the facts in this section are taken from documents on the record of Petitioner's underlying criminal case (no. 3-16-cr-219-1). Accordingly, the documents cited in this particular section (but not the other sections) are from the underlying criminal case and not the instant civil case.

of 18 U.S.C. §§ 922(g)(1) and 924 (Count Two); (iii) possession of ammunition subsequent to a felony conviction, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (Count Three); and (iv) possession of firearms in furtherance of a federal drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Four).[2] (Doc. No. 1-1, "Indictment"). On July 31, 2017, Petitioner pled guilty to Counts One through Four of the Indictment. (Doc. No. 66). On December 13, 2017, Chief Judge Waverly Crenshaw sentenced Petitioner to serve a term of imprisonment of 204 months total (144 months on Count One, 120 months on Counts Two and Three, to all run concurrently, plus 60 months on Count Four to run consecutively to the other three counts), followed by four years of supervised release. (Doc. No. 73). Thereafter, Petitioner appealed, and the Sixth Circuit affirmed the district court's judgment. (Doc. Nos. 75, 76, 79, 80); *United States v. Robinson*, 744 F. App'x 277 (6th Cir. 2018). Petitioner has been serving his sentence at United States Penitentiary Hazelton. According to the Federal Bureau of Prisons, Petitioner's projected release date is April 25, 2031. *See Federal Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Sept. 6, 2022).

On June 20, 2019, Petitioner filed the instant Petition.

## SECTION 2255 PROCEEDINGS

28 U.S.C. § 2255 provides a statutory mechanism for challenging the imposition of a federal sentence:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

---

[2] Counts Two and Four specified a Remington, model 760 Gamemaster .30-06 rifle, and a Ruger model GP 100, .357 Magnum revolver as the firearms possessed.

28 U.S.C. § 2255(a). In order to obtain relief under Section 2255, a petitioner "'must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)).

If a material factual dispute arises in a Section 2255 proceeding, the court must hold an evidentiary hearing to resolve the dispute. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). But a petitioner is not entitled to an evidentiary hearing if he has not alleged any facts that, even if accepted as true, would entitle the petitioner to federal habeas relief. *See McSwain v. Davis*, 287 F. App'x 450, 458 (6th Cir. 2008). On the other hand, a hearing may be unnecessary precisely because they *cannot* be accepted as true; that is, an evidentiary hearing is unnecessary "'if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Monea v. United States*, 914 F.3d 414, 422 (6th Cir. 2019) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). Relatedly, an evidentiary hearing likewise is not required if the record conclusively shows that the petitioner is not entitled to relief. 28 U.S.C. § 2255(b); *Ray*, 721 F.3d at 761; *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999).

## ANALYSIS

### I. *Grounds One and Two*

In Grounds One and Two, Petitioner asserts that he was denied effective assistance of counsel during the suppression hearing (Ground One) and during the plea process (Ground Two).

A defendant has a Sixth Amendment right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "It has long been settled that a guilty plea is open to attack on the ground that counsel did not provide the defendant with reasonably

competent advice." *Hunter v. United States*, 160 F.3d 1109, 1115 (6th Cir. 1998) (internal quotation marks and citation omitted). In *Strickland*, the Supreme Court set forth a test to evaluate claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that rendered the result unreliable.

*Strickland*, 466 U.S. at 687.[3] Under the first prong of the *Strickland* test, a petitioner must establish that his attorney's representation fell below an objective standard of reasonableness. *Id.* at 688. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Id.* at 688. Strategic choices made by counsel after thorough investigation are virtually unchallengeable. *Id.* at 690. Petitioner bears the burden of proving by a preponderance of the evidence that counsel was deficient. *See Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citing *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006)).

Under the second prong of *Strickland*, the petitioner must establish that the attorney's poor performance prejudiced the defense of the case. *Monea*, 914 F.3d at 419. "Courts need not address the first element if the petitioner cannot prove prejudice. In fact, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Id.* (quoting *Strickland*, 466 U.S. at 697). "Proving prejudice is not easy." *Id.* Petitioners face a "high burden" in demonstrating "that there is a reasonable probability that, but

---

[3] The Sixth Circuit has concluded that the *Strickland* standard discussed herein applies to ineffective assistance of appellate counsel as well. *Jackson v. Bradshaw*, 681 F.3d 753, 774 (6th Cir. 2012).

for counsel's unprofessional errors, the result of the proceeding would have been different." *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted).

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985). Court-appointed counsel, however, does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). An attorney's failure to present a non-meritorious issue on appeal does not constitute ineffective assistance of counsel. *Daniel v. Overton*, 845 F. Supp. 1170, 1176 (E.D. Mich. 1994).

*A. Suppression Hearing*

During the pretrial stage of Petitioner's case, his counsel filed a motion to suppress that challenged the constitutionality of the search warrant executed by law enforcement at Petitioner's home. (R. 15). After a full evidentiary hearing, Judge Crenshaw found that the warrant affidavit lacked the requisite nexus to support probable cause, but that the search did not violate Petitioner's Fourth Amendment rights because law enforcement acted in good faith when relying on the warrant, and that therefore the good-faith exception to the exclusionary rule articulated in *United States v. Leon*, 468 U.S. 897, 922 (1984) was applicable. (R. 35). Petitioner's counsel moved to reopen the hearing, arguing that evidence not presented in the first evidentiary hearing would establish that law enforcement, specifically Detective Nearn, "w[as] dishonest or reckless in preparing [his] affidavit" and thus the Leon good-faith exception did not apply. (R. 52). Judge Crenshaw denied the motion to reopen the hearing, finding that Petitioner's counsel had "not presented a reasonable explanation as to why he did not present this evidence . . . on the initial motion to suppress." (R. 58 at 1). Judge Crenshaw further explained that "even if [the Court] were to reopen the hearing, none of [Petitioner's] averments make the Court question whether Detective

Nearn was 'dishonest or reckless.'" (*Id*. at 2). Petitioner filed a motion asking Judge Crenshaw to reconsider that ruling, and that request was denied. (R. 59, R. 63). In his Petition, Petitioner argues that his counsel, by failing to introduce evidence of bad faith during the initial suppression hearing, rendered ineffective assistance of counsel in litigating the suppression motion. (Doc. No. 2 at 15-21).

It is Petitioner's burden, at this stage, to allege facts that are not inherently incredible, conclusory, or contradicted by the record and that show his counsel rendered ineffective assistance. *See Monea*, 914 F.3d at 422; *Short*, 471 F.3d at 691. Petitioner has not done so.

To succeed on the prejudice prong of an ineffective assistance of counsel claim in relation to a motion to suppress, the "petitioner must show that a suppression motion had merit, and that if the motion had been granted, he would not have pled guilty and would have insisted on his right to stand trial." *Brooks v. Edwards*, 96 F.3d 1448 (6th Cir. 1996) (citing *Hill v. Lockhart*, 474 U.S. 52, 60 (1985)); *see also Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (stating that to succeed on the prejudice prong, the petitioner must "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice"); *see also United States v. Price*, 118 F. App'x 465, 469 (10th Cir. 2004) (rejecting ineffective assistance claim without a hearing in connection with counsel's alleged failure to present certain testimony at the suppression hearing because "[w]e cannot say . . . that, had counsel presented this testimony, there is a reasonable probability that there would have been a different outcome at either the suppression hearing or the trial").

Petitioner identifies the argument that his counsel "neglected to present to the court" regarding the good-faith exception as follows:

> (1) Detective Nearn had mislead the Magistrate on the warrant application [by representing] that Petitioner had previously been arrested and convicted of homicide and [by] recklessly conceal[ing] the fact that the CI was cooperating for a lesser sentence; (2) that on the occasion the police purportedly followed Petitioner home he met with a third party prior to going home, thus made the nexus of the drug questionable at best.

(Doc. No. 2 at 17). In other words, according to Petitioner, counsel was ineffective in not presenting this argument to negate the applicability of the good-faith exception.

First, the assertion that Detective Nearn misled the magistrate on the warrant application is belied by the record. As the Government accurately explained when responding to Petitioner's motion to reopen the suppression hearing in his underlying criminal case,

> Robinson's quarrel with Detective Nearn's explanation in his affidavit that Robinson had "previous charges for criminal homicide" is equally baseless. The relevant pages of Robinson's National Crime Information Center report, which are attached in redacted form to this Opposition as Exhibit A [R. 54-1], reflect a "charge" of "Criminal Homicide" issued by the Metropolitan Police Department in Nashville. Robinson was arrested in connection with that charge on September 14, 2001. Similarly, Robinson's Pretrial Services Report (at page 4) describes Robinson's charge as "attempted criminal homicide." Detective Nearn's accurate transcription of this information into his warrant affidavit from a law enforcement database that would have been available to him cannot, by definition, be considered "dishonest or reckless."

(R. 54 at 5). While Petitioner maintains that the National Crime Information Center report is inaccurate, that does not demonstrate that Detective Nearn acted dishonestly in relaying this information in the warrant affidavit. Moreover, contrary to Petitioner's contention, Detective Nearn did not indicate in the warrant affidavit that Petitioner had been convicted of criminal homicide; rather Detective Nearn indicated instead only that Petitioner had "previous charges for criminal homicide[.]" (R. 15-2 at 5) (emphasis added).

Next, as to the assertion that Detective Nearn acted dishonestly when he "concealed" that the CI was cooperating for a lesser sentence, Petitioner has pointed to no case law that requires the affiant to disclose in a warrant affidavit the extent and nature of an informant's motive to cooperate

with law enforcement. The Court has looked itself and found the opposite. *See United States v. Williams*, 477 F.3d 554, 558-59 (8th Cir. 2007) (holding that the lack of information in a search warrant affidavit concerning promises of leniency is not *per se* misleading). Moreover, one would have to greatly underestimate the likely experience and common sense of the magistrate who issued the warrant to presume that he or she was not well aware of a likelihood that the CI had some kind of substantial motive to cooperate[4] even without being specifically told that this was the case (*i.e.*, that CI was cooperating for a lesser sentence). Thus, on this record, Petitioner has not met his burden to show that if Petitioner's counsel had submitted this information at the evidentiary hearing it would have changed the outcome of Judge Crenshaw's suppression ruling by showing that the good-faith exception was inapplicable.

Finally, as to Petitioner's assertion that Detective Nearn intentionally omitted from the search warrant affidavit information about Petitioner meeting with a third-party at a pertinent time, the Sixth Circuit has already rejected this argument. *See Robinson*, 744 F. App'x at 281 ("Moreover, Robinson has not proven that the affidavit's allegedly false information regarding officers following Robinson home after the second drug transaction was knowing or reckless."). Petitioner therefore cannot relitigate this argument during his Section 2255 proceeding. *See Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999).

Thus, the Court concludes that Petitioner has failed to "prove that his Fourth Amendment claim [would have been] meritorious" if his counsel had of introduced the evidence Petitioner contends should have been submitted at the suppression hearing. *See Higgins v. United States*, No. 10-1316-JDT-EGB, 2015 WL 4601161, at *48 (W.D. Tenn. July 29, 2015) (rejecting a petitioner's claim of ineffective assistance of counsel where the petition "fails to state what his attorney could

---

[4] It seems indisputable that informants tend to cooperate with law enforcement because they have some motive to do so.

have done to avoid the good-faith exception."); *see also Rose v. United States*, No. 18-4109, 2019 WL 5855765, at *2 (6th Cir. July 10, 2019) (affirming denial of Section 2255 petition without a hearing where the petitioner "failed to show how a fuller or more developed argument by counsel [at the suppression hearing] would have changed the ultimate determination that the good-faith exception applied."). Accordingly, he has failed to demonstrate prejudice and his ineffective assistance of counsel claim as it relates to the suppression hearing will be denied.

*B. Plea Process*

Petitioner next contends that he received ineffective assistance of counsel when his counsel advised him to plead guilty to the Section 924(c) claim, of which he asserts that he was "actually innocent." He contends that:

> Prior to the entry of the guilty plea, Petitioner discussed the charge of possession of a firearm in furtherance of the drug trafficking crime. Petitioner explained to counsel that the guns had no relation to the drugs that he merely has possessed to guns, that they were not used in any way to further the drug trafficking the government alleged. In turn, counsel informed Petitioner it did not matter the mere prese3nce [sic] of the firearms in the same house constituted a violation of 18 U.S.C. § 924(c). Based on this representation, Petitioner waived his right to a trial.

(Doc. No. 2 at 22). Petitioner contends that the representation of his counsel was incorrect, and therefore this counsel's ineffectiveness prevented him from entering a knowing and voluntary guilty plea. (*Id.*).

Criminal defendants are entitled to the constitutionally effective assistance of counsel during the plea negotiation phase. *Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012) ("In today's criminal justice system, . . . the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant."). "The decision to plead guilty—first, last, and always—rests with the defendant, not his lawyer.*" Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003). "Although the attorney may provide an opinion on the strength of the government's

case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction." *Id*. The Sixth Circuit has described the obligations of defense counsel as it relates to advice during the plea negotiation stage:

> A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available. In a system dominated by sentencing guidelines, we do not see how sentence exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time.

*Id*. at 553 (citing *United States v. Day*, 969 F.2d 39, 43 (3rd Cir. 1992)).

A defendant may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented him from entering a knowing and voluntary guilty plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The two-part test of counsel's effectiveness announced in *Strickland*, 466 U.S. at 687, applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In order to obtain relief on this basis, a petitioner raising such a claim must first show that counsel's advice fell outside the range of competence demanded of attorneys in criminal cases. *Hill*, 474 U.S. at 59.

> The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 59.

In this case, Petitioner has failed to demonstrate that counsel performed deficiently by advising him to plead guilty. According to the factual basis read at the plea hearing:

> During the search of [Petitioner's] residence . . . , the police recovered the following

items of evidence from the following locations:

Guns and Ammunition: A Remington Model 760 Gamemaster .30-06 rifle next to the bed in Bedroom Number 1. Five live .30 caliber rifle rounds and a black rifle magazine from inside the rifle found in Bedroom Number 1. A Ruger Model GP 1--, .357 magnum revolver from Bedroom Number 1. Six live .357 magnum rounds from inside the Ruger revolver in Bedroom Number 1. A black pistol magazine from the kitchen door. A box of 10 rounds of .30 caliber ammunition from a shoebox in the closet of Bedroom Number 2. A plastic bag containing 20 rounds of assorted live ammunition from inside the nightstand in Bedroom Number 1. Nine rounds of 9mm Amerk. Four rounds of RP .357 magnum and seven rounds of Winchester .357 mag. A box containing 43 live rounds of Winchester .380 caliber ammunition from a plastic bag in the bottom right drawer of a TV stand in Bedroom Number 1. And one loose 9mm round form the bottom right drawer of the TV stand in Bedroom Number 1.

Drugs: Approximately 1.12 grams of loose marijuana, a Schedule I controlled substance, form the kitchen drawer. Approximately 1.06 grams of crack cocaine, a Schedule II controlled substance from the kitchen drawer. A marijuana roach weighing approximately 1.18 grams, form the center console of the Ford Taurus. A sock containing a total of 15.4 grams of cocaine hydrochloride and 31.67 grams of crack cocaine, both Schedule II controlled substances, form the top cabinet in the kitchen. A clear plastic bag containing 1.15 grams of crack cocaine, a Schedule II controlled substance, from inside a men's size 12 ½ Nike showbox in Bedroom Number 1. And two plastic bags containing 0.78 grams of marijuana, a Schedule I controlled substance, from the top of a cabinet above the stove in the kitchen.

(R. 91 at 19-21). At the plea hearing, Petitioner admitted under oath that these facts were true. (*Id*. at 25-26). He acknowledged that he lived at the residence. (*Id*. at 22). Robinson also admitted that he owned the rifle and the revolver that were recovered in the house. (*Id*.). Robinson explained that he kept the rifle by the bed and that the revolver was on the other side of the bed underneath the mattress. (*Id*.). Robinson said that he had purchased the guns a few weeks earlier, and that he had gotten them for protection. (*Id*.).

Nonetheless, Petitioner argues he received ineffective assistance of counsel because his counsel advised him to plead guilty even though (according to Petitioner) these facts would have been insufficient to sustain a conviction for possessing a firearm in furtherance of a drug-trafficking offense.

This argument is based on a flawed premise, however, because these facts, if proven at trial, indeed *would* have been sufficient for a reasonable jury to convict Petitioner of possessing firearms in furtherance of a drug trafficking offense. *See United States v. Steele*, 919 F.3d 965, 970 (6th Cir. 2019) ("[A]lthough possession of a firearm in the same premises as the drug trafficking activities alone is insufficient to support a conviction under section 924(c), a jury can reasonably infer that firearms which are strategically located so as to provide defense or deterrence in furtherance of the drug trafficking are used in furtherance of a drug trafficking crime."); *United States v. Ray*, 803 F.3d 244, 264–65 (6th Cir. 2015) ("a rational juror could have found that sufficient facts were presented demonstrating a "specific nexus" between the handgun and Ray's drug trafficking offense—namely, that he maintained the handgun in the closet with the crack cocaine to protect himself and his drugs when transacting business. Thus, a reasonable jury could have concluded that Ray possessed the .38 caliber handgun 'in furtherance of' drug trafficking."); *United States v. Coffee*, 434 F.3d 887 (6th Cir. 2006) (affirming denial of motion for judgment of acquittal and explaining that a jury can infer intent to distribute a drug from the quantity, as well as the manner and packaging of the drugs and the presence of weapons and equipment for the sale of drugs); *United States v. Mendizabal*, 214 F. App'x 496, 501 (6th Cir.2006) (reasonable trier of fact could have found that a loaded firearm located in a safe alongside cocaine, drugs linked to the conspiracy for which defendant was charged, was positioned to provide protection for the cocaine and thus possessed in furtherance of the defendant's cocaine trafficking conspiracy); *United States v. Swafford*, 385 F.3d 1026, 1029 (6th Cir. 2004) (explaining that a jury can consider whether a firearm is strategically located so that it is quickly and easily available for use, whether the firearm was loaded, the type of weapon, the legality of its possession, and the circumstances under which it was found in determining whether a defendant possessed the firearm "in furtherance" of drug

trafficking). Accordingly, counsel's performance did not fall below an objective standard of reasonableness when he advised Petitioner to plead guilty. Thus, the record conclusively shows that Petitioner cannot prevail on his ineffective assistance of counsel claim in regards to the plea process and this claim will be denied.

II. *Ground Three*

In Ground Three, Petitioner argues that Judge Crenshaw committed plain error when he "imposed a sentence of 144 months on counts 2 and 3 for a violation of 18 U.S.C. § 922(g), a statutory crime that carries a statutory maximum of 10 years." (Doc. No. 2 at 24).

In Response, the Government explains:

> Robinson seems to be conflating his sentence on Count 1 with his sentences on Counts 2 and 3. He was sentenced to 120 months on Counts 2 and 3, which are both felon in possession of a firearm offenses. The statutory maximum for such offenses committed in violation of § 922(g) is 120 months. 18 U.S.C. § 924(a)(2). He was sentenced to 144 months on Count 1 in accordance with 21 U.S.C. § 841(b). His sentences on Counts 1, 2, and 3 run concurrently for a total of 144 months. Hence, the district court did not err when it sentenced Robinson to 120 months on Counts 2 and 3 because the sentence equates to the statutory maximum.

(Doc. No. 18 at 15-16).[5]

The Court has reviewed the Judgment (R. 73) and concurs with the Government that Petitioner misunderstood his sentence on Counts 2 and 3. It is clear from the Judgment that Petitioner was sentenced to 120 months on each of Counts 2 and 3, the statutory maximum for each of those counts.[6] (R.73 at 3). Therefore, Ground Three is belied by the record, and relief under Ground Three is denied.

---

[5] Actually, Count Three charged the offense of possession of *ammunition* subsequent to a felony conviction, but such an offense is a violation of Section 922(g)(1) just as is possession of *firearms* subsequent to a felony conviction and can effectively be treated as such for purposes of the discussion herein.

[6] These concurrent 120-month sentences were imposed to run, in turn, concurrent with a 144-month sentence on Count 1, to which a 60-month consecutive sentence was imposed on Count Four.

III. *Ground Four*

In Ground Four, Petitioner asserts that he is actually innocent of Counts 2 and 3, which are both violations of 18 U.S.C. § 922(g), based on the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). Petitioner argues that he did not know that he "was in the status of breaking federal law" by possessing firearms and ammunition, thus, the Government "failed to establish a crime against the United States." (Doc. No. 9 at 5-8). He additionally asserts that he did not know that the firearm had traveled in or affected interstate commerce before he possessed it. (*Id*). Because of his (alleged) lack of knowledge of these things, Petitioner claims that he did not enter his guilty plea intelligently and that the Court lacked jurisdiction because his indictment failed to charge a valid federal offense. (*Id.*).

As to Petitioner's knowledge, the Government argues that Petitioner misinterprets *Rehaif*, which does "not graft onto § 922(g) an ignorance-of-the-law defense." (Doc. No. 28 at 14 (quoting *United States v. Bowens*, 938 F.3d 790, 797 (6th Cir. 2019))). The Government explains that "[t]he court's holding in *Rehaif* does not require a defendant to be aware that he is violating federal law as [Petitioner] asserts, but rather that 'he knew he possessed a firearm and also that he knew he held the relevant status when he possessed it.'" (*Id*. (quoting *Rehaif*, 139 S. Ct. at 2194)). The Government contends that Petitioner "has failed to assert that he was unaware of his status [as a convicted felon] and, thus, cannot argue that the Court's holding in *Rehaif* impacts his conviction." (*Id.*). The Government further argues that the use of "knowingly" in 924(a)(2) does not apply to the jurisdictional element, "in or affecting commerce," in 922(g)(1), and therefore, Petitioner's alleged lack of knowledge that the firearms he possessed had traveled in interstate commerce does not demonstrate actual innocence. (*Id.* at 15).

The Court agrees with the Government. Instead, the Supreme Court in *Rehaif* held that a

"knowing" violation of Section 922(g)—i.e., a violation of a Section 922(g) that (like the violations for which Petitioner was convicted) is subject to a maximum prison term of ten years pursuant to 18 U.S.C. § 924(a)(2) because it was done "knowingly"—requires the defendant to know (among other things) that at the time of the alleged possession (s)he had a particular status[7] rendering the defendant's possession of the firearm illegal when (s)he possessed the firearm. *See* 139 S. Ct. at 2200.[8] Here, the relevant status is felony status, *i.e.*, having previously been convicted of a crime punishable by a term of imprisonment exceeding one year. As the Government points out,

---

[7] This status is often referred to as being a "prohibited person."

[8] The undersigned is confident that he here has accurately stated the actual holding of *Rehaif*. That is, he is confident from a plain reading of *Rehaif* that the actual holding was about what constitutes a *knowing* violation of Section 922(g)—a violation of Section 922(g) that counts as a "knowing[ ]" violation of Section 922(g) for purposes of Section 924(a)(2)—and not what constitutes *a* violation of Section 922(g). Since then, however, overlooking *Rehaif*'s focus on the "knowingly" language of Section 924(a)(2), the Sixth Circuit has recast the holding of *Rehaif* in different terms, stating that *Rehaif*'s hold was about what was required to prove *a* violation of Section 922(g)(1). *United States v. Johnson*, No. 20-4125, 2021 WL 4776335, at *1 (6th Cir. Oct. 13, 2021) ("In *Rehaif*, the Supreme Court held that, to prove a violation of § 922(g), the government 'must show that the defendant knew' that he was a felon when he possessed the firearm."). The Supreme Court has likewise seemed to recast *Rehaif*'s holding at least once. *See Greer v. United States*, 141 S. Ct. 2090, 2095 (2021) ("In *Rehaif*, . . . this Court clarified the mens rea requirement for firearms-possession offenses, including the felon-in-possession offense. In felon-in-possession cases after Rehaif, the Government must prove not only that the defendant knew he possessed a firearm, but also that he knew he was a felon when he possessed the firearm."). On the other hand, the Supreme Court also has (at least once) correctly characterized *Rehaif* as instead addressing specifically what constitutes a "knowing[ ]" violation of Section 922(g) for purposes of Section 924(a)(2). *Ruan v. United States*, 213 L. Ed. 2d 706, 142 S. Ct. 2370, 2378 (2022) ("[I]n *Rehaif*, we interpreted a statutory scheme in which one statutory subsection [Section 924(a)(2)] provided penalties for anyone who 'knowingly violates' a separate subsection [Section 922(g)].").

The difference between a "knowing" violation and *a* violation (*i.e.*, not necessarily a *knowing* violation) is not merely academic. Section 924(a)(2) in pertinent part prescribes a ten-year statutory maximum for anyone who "knowingly" violates Section 922(g). Notably, Section 924(a)(2) does not indicate that someone who does not violate Section 922(g) "knowingly" necessarily does not violate Section 922(g) at all; nor does it indicate that someone who does violate Section 922(g), but does not do so "knowingly," is not subject to criminal liability. To the contrary, Section 924 makes entirely clear that violations of Section 922, including Section 922(g), can occur—and result in criminal liability under certain circumstances—irrespective of whether the violation was committed "knowingly." *See* 18 U.S.C. § 924(a)(1)(D) ("except as provided in this subsection [which would include Section 924(a)(2)] . . . whoever–willfully violates any . . . provision of this chapter, shall be fined under this title, imprisoned not more than five years, or both."); 18 U.S.C. § 924(e)(1) ("In the case of a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be . . . imprisoned not less than fifteen years[.]"). In Petitioner's case, it is clear that he was sentenced under Section 924(a)(2), inasmuch as his (concurrent) sentences on the two violations of Section 922(g) were each for ten years—too high to be sentences under 18 U.S.C. § 924(a)(1)(D), and too low to be sentences under 18 U.S.C. § 924(e)(1).

Petitioner does not allege that he did not know he was a felon. So Petitioner has not made any allegations that implicate *Rehaif* in any way. In *Rehaif*, the Supreme Court did not hold that a violation of Section 922(g)—whether knowing or unknowing—requires that the defendant be aware that his possession was in violation of federal law. Every circuit (including the Sixth Circuit) to consider whether *Rehaif* encompasses such a holding has found that *Rehaif* does not. *See United States v. Mack*, No. 20-376-CR, 2021 WL 4851391, at *3 (2d Cir. Oct. 19, 2021) ("Following *Rehaif*, we expressly held that "a felon need *not* specifically know that it is illegal for him to possess a firearm under federal law" in order to be liable under sections 922(g)(1) and 924(a)(2)." (citing *United States v. Bryant*, 976 F.3d 165, 172–73 (2d Cir. 2020) (emphasis added))); *see also United States v. Benton*, 988 F.3d 1231, 1237–39 (10th Cir. 2021); *United States v. Brown*, 845 F. App'x 1, 3 (D.C. Cir. 2021); *United States v. Singh*, 979 F.3d 697, 727–28 (9th Cir. 2020); *United States v. Maez*, 960 F.3d 949, 954–55 (7th Cir. 2020); *United States v. Bowens*, 938 F.3d 790, 797–98 (6th Cir. 2019). Petitioner's alleged lack of awareness that his firearm possession broke federal law thus does not implicate *Rehaif*.

Furthermore, in *Rehaif*, "no one [even] claim[ed] that the word 'knowingly' modifies the statute's jurisdictional element (*i.e.*, that the firearm be "in or affecting commerce"). 139 S. Ct. at 2196. And the Supreme Court expressly declined to embrace such a claim on its own, and instead made quite clear that it is holding simply did not implicate in any way the jurisdiction element. *Id.* Thus, Petitioner is not entitled to relief based on *Rehaif* on his assertion that he had no knowledge that the weapon affected interstate commerce or crossed state lines.

Moreover, the record does not demonstrate Petitioner's innocence on the Section 922(g) charges, or that the failure to advise him at the time his plea of the requirement that he knew he was a felon affected his decision whether to plead guilty or otherwise rendered his guilty plea

unknowing or involuntary. Instead, there is good reason to believe that Petitioner naturally would have known at the time of his firearms possession that he was a felon, and Petitioner has done nothing to show that the Government would have been unable to prove such knowledge or that Petitioner would have decline to plead guilty specifically because he believed the Government could not prove such knowledge. *See Greer*, 141 S. Ct. at 2095 (2021) ("As many courts have recognized and as common sense suggests, individuals who are convicted felons ordinarily know that they are convicted felons."); *id.* at 2097 ("If a person is a felon, he ordinarily knows he is a felon. Felony status is simply not the kind of thing that one forgets. That simple truth is not lost upon juries. Thus, absent a reason to conclude otherwise, a jury will usually find that a defendant *knew* he was a felon based on the fact that he *was* a felon. A defendant considering whether to plead guilty would recognize as much and would likely factor that reality into the decision to plead guilty." (internal quotation marks and citation omitted)); *United States v. Hobbs*, 953 F.3d 853, 857–58 (6th Cir. 2020) (where "no contemporaneous evidence suggests that he would have rejected the plea deal," the defendant had not shown that there is a reasonable probability that he would not have entered his plea had he been properly informed of all of Section 922(g)'s elements). And even assuming there were defects in Petitioner's indictment as to the Section 922(g) charges, defects in an indictment are not jurisdictional because they do not deprive courts of their power to adjudicate a criminal case. *United States v. Cotton*, 535 U.S. 625, 630 (2002).

Accordingly, relief under Ground Four is DENIED.

IV. *Ground Five*

In Ground Five, Petitioner asserts that he is actually innocent of Count 4, a violation of 18 U.S.C. § 924(c)), because, according to him, "there was no substantial evidence that the firearms

were used to further the drug trafficking crime in any means." (Doc. No. 9 at 12). He further contends that he did not enter his guilty plea as to Count 4 intelligently because he "did not fully understand" that the Government was required to "establish a proper nexus to the drugs." (*Id*. at 14).[9] The Court need not address each of these claims in turn because the claims have been procedurally defaulted as they were not raised on direct appeal. *See Robinson*, 744 F. App'x at 281.

The procedural default doctrine serves to limit attempts by defendants to use collateral proceedings as a means of appeal and reflects "the general rule that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). To obtain relief under Section 2255 based on errors that were not raised on direct appeal, a petitioner "must show both (1) 'cause' excusing his [ ] procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 167–68 (1982) (citation omitted). This standard is "a significantly higher hurdle than would exist on direct appeal." *Id*. at 166. A Section 2255 petitioner does have an alternative to meeting this high hurdle: showing actual innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998) (noting that a defendant may alternatively obtain relief under Section 2255 based on errors not raised on direct appeal if he demonstrates actual innocence) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Petitioner does not assert cause or prejudice for his procedural default. He also does not claim that his alleged actual innocence serves specifically to excuse his procedural default. Nevertheless, the Court will construe Petitioner's purported actual-innocence argument—which,

---

[9] He also conclusorily (and, to say the least, far-fetchedly) asserts that the Court lacks jurisdiction over Count 4. (*Id*. at 15). That claim fails because it is asserted in wholly conclusory fashion and thus does not warrant relief under Section 2255, see *Monea*, 914 F.3d at 422.

as explained below, is not actually an actual-innocence argument—as one made to excuse his procedural default.

The actual innocence exception is exceedingly narrow in scope, as it concerns a petitioner's *actual* innocence rather that his *legal* innocence. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998). "[A]ctual innocence means factual innocence, not mere legal innocence." *Bousely v. United States*, 523 U.S. 614, 623 (1998). The distinction here is between the defendant not *actually* having committed the crime as defined by all of its elements (*i.e.*, not all acts necessary to committing the crime having actually occurred, and/or not all circumstances necessary to make these acts a crime having actually existed) and the defendant not having been *proven* in all respects to have committed the crime (*i.e.*, the Government not having established the occurrence of all acts necessary to committing the crime and all circumstances necessary to make those acts a crime). Petitioner cannot successfully raise a claim of actual innocence because his argument that the evidence was insufficient to prove he possessed the firearm in furtherance of the drug conspiracy is not sufficient to demonstrate he is actually innocent of the Section 924(c) charge; it is an argument about the Government not having established all elements of the charge, not an argument that not all elements actually were existent in his case. Petitioner has not submitted any evidence establishing he is actually innocent, thus factually innocent; but rather, he attacks the legal sufficiency of the proof that he possessed the firearm to further the drug conspiracy. Therefore, Petitioner's claim that the evidence is insufficient to support his Section 924(c) conviction is not even cognizable as an actual-innocence argument, let alone one that succeeds in establishing that he is actually innocent of the Section 924(c) conviction.

Even if a true actual-innocence argument had been made, the record—specifically, the agreed factual basis and the plea transcript—supports the exact opposite conclusion. (R. 91 at 9-

10, 17-23). In particular, the factual basis supports the conclusion that Petitioner possessed the two firearms for purposes of protection of himself, his illegal drugs, or both. So the (purported) claim of actual innocence fails alternatively for this reason. *See Posey v. United States*, No. 3:20-CV-00121, 2020 WL 2129235, at *7 (M.D. Tenn. May 5, 2020) (Richardson, J.) ("Petitioner does not claim actual innocence, and any such claim would have been frivolous anyway, given his admission of his crimes in his signed plea agreement, at his plea hearing, and at sentencing."). Thus, his procedural default is not excused.

Accordingly, relief on Ground Five will be denied without an evidentiary hearing.

## CONCLUSION

For the above-mentioned reasons, Petitioner's Petition (Doc. No. 1) and Supplemental Petition (Doc. No. 9) will be DENIED.

An appropriate Order will be entered.

_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE